*Chevrette v. Touchette*, 639-11-18 Wncv (Teachout, J., July 25, 2019)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 639-11-18 Wncv** |

**MICHELE CHEVRETTE, Individually
and as Administrator of the Estate of
Timothy W. Adams**
    **Plaintiff**

    **v.**

**MIKE TOUCHETTE, Commissioner,
Vermont Department of Corrections**
    **Defendant**

### DECISION
### The State's Motion for Summary Judgment

Plaintiff has appealed a denial of her public records request to the Commissioner of the Department of Corrections, and the State has filed a motion for summary judgment. The court heard oral argument on July 22, 2019. Plaintiff is represented by Attorney James Valente and the Commissioner is represented by Attorney Jared C. Bianchi.

Mr. Timothy Adams died while incarcerated at Vermont's Southern State Correctional Facility. Plaintiff Michele Chevrette is the administrator of Mr. Adams' estate and is enquiring into the circumstances of death. She requested the Vermont Department of Corrections to produce "a copy of the report arising from the [DOC's] review of Mr. Adams' death" and a copy of any related "investigation records" pursuant to Vermont's Access to Public Records Act (PRA), 1 V.S.A. §§ 315–320.[1]

The DOC records custodian disclosed that one or more reports was being prepared but would be withheld as confidential "peer review committee" records pursuant to 26 V.S.A. §§ 1441–1443 (peer review committees) and 1 V.S.A. § 317(c)(1) (exempting from the PRA records "which by law are designated confidential"). Ms. Chevrette sought administrative review, which was denied for the same reasons as cited by the records custodian, and then appealed to this court.

The State has provided Ms. Chevrette with a timeline and a privilege index identifying withheld records consisting of two reports and one meeting attendance sheet that are confidential *peer review committee* records protected from disclosure by 26 V.S.A. § 1443 and 1 V.S.A. §

---

[1] Ms. Chevrette included with the request an executed authorization to disclose any protected health information. Ms. Chevrette as estate administrator may have a separate basis, apart from being a member of the public, to certain records. The court agrees with the State that her request in this case must be analyzed as if she were an ordinary member of the public making a routine PRA request. The State is not required to honor an individual waiver of privilege or confidentiality.

317(c)(1).  It also argues that these records are exempt from disclosure because they include patient identifiable prescription information, clinical information, personal health information, and inmate information.  Ms. Chevrette does not dispute that the withheld materials are peer review committee records, but she argues that any "records otherwise available from original sources" are not protected by peer review confidentiality.  She thus seeks all such records.  With regard to any records containing confidential health information, she seeks those records with any confidential information redacted.  She argues that none of the records should be treated as confidential inmate records, 28 V.S.A. § 107(b), because the DOC has failed to engage in (or complete) mandatory rulemaking, *id*. § 107(a).

A peer review committee is formed to "evaluate and improve the quality of health care rendered by providers of health services or to determine that health services rendered were professionally indicated or were performed in compliance with the applicable standard of care or that the cost of health care rendered was considered reasonable by the providers of professional health services in the area."  26 V.S.A. § 1441.  The records of a peer review committee are confidential as follows:

> The proceedings, reports, and records of [peer review committees] . . . shall be confidential and privileged . . . .  However, information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use . . . merely because they were presented during the proceedings of such committee, nor shall any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his or her knowledge, but such witness shall not be asked about his or her testimony before such committee or about opinions formed by him or her as a result of such committee hearings.

26 V.S.A. § 1443(a).  "The peer review privilege is designed to protect the honest exchange of opinions among medical professionals for the purpose of self-improvement.  To that end, states generally privilege conversations and documents that arise during the review and evaluation of medical care by a designated reviewing body.  By contrast, conversations and documents arising in the course of ordinary business operations are not protected."  *Robinson v. Springfield Hosp.*, No. 109–CV–75, 2010 WL 503096 *2 (Vt. Dist. Ct. Feb. 5, 2010) (unpublished).

The two withheld reports consist of a mortality report, which is prepared prior to the peer review committee meeting for the use of the committee, and an administrative report, which is prepared after the meeting and includes the self-critical analysis that is the purpose of the peer review process.  Because the DOC's medical program qualifies as a health care provider for which the peer review statute is applicable, these documents are confidential peer review records as defined by statute, and are exempt from public disclosure.

The issue Ms. Chevrette raises is whether, because the DOC medical program falls within the larger sphere of the Department of Corrections, which is a department of state government, there is a DOC report arising from DOC's review of Mr. Adams' death and/or related DOC "investigation records" that, even though they may have been incorporated into the peer review process, are government records that qualify as public records and should not be

2

shielded from public disclosure by virtue of having been used in connection with the medical peer review. Examples might include records of interviews with fellow inmates, security guards, and others who may have had contact with Mr. Adams during the period leading up to death, separate and apart from records or documents of health care staff. The Affidavit of Benjamin Watts, a DOC employee, suggests this might be so. In describing the preparation of the mortality report, he stated as follows:

¶ 28.  The review is *multi-disciplinary* in nature.
¶ 29.  The review will include DOC health services staff including myself *as well as staff from the contractor and security staff where appropriate.*
(Emphasis added; Affidavit of Benjamin Watts attached to State's Motion.)

It is unclear whether either the mortality report or administrative report may have referenced "investigation records" of DOC that stand on their own, even if they were later incorporated into the peer review process. In other words, there might be DOC original source documents that call for a ruling by the court on whether they should be provided as DOC documents separate and apart from their use in the peer review process.[2]

In order to address this, the State is required to refine its "privilege log" to describe, as to each of the mortality and administrative reports, whether any non-medical records are incorporated into or referred to or described, and if so, the position of the DOC employee who created such records, the date on which they were created, and a generalized identification of the type of record it is (without disclosing substantive content).

## ORDER

For the foregoing reasons,
1. The State's motion for summary judgment is granted as to the mortality and administrative reports themselves;
2. The State shall produce a refined "privilege log" as described in the paragraph above no later than August 7, 2019;
3. The State shall provide by the same date a certification pursuant to 1 V.S.A. § 318 (b)(4) as to whether any records exist responsive to the original request separate and apart from health care provider staff; and
4. Following production of the above, either party may request *in camera* review of any records about which there is uncertainty as to the applicability of exemption.

Dated at Montpelier, Vermont this _____ day of July 2019.

_____
Mary Miles Teachout
Superior Judge

---

[2] Mr. Adams' medical records have been fully produced to Ms. Chevrette already as a matter of private right, and are not at issue in this case. Ms. Chevrette may also have a basis for seeking non-medical records pursuant to V.R.C.P. Rule 27.